# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFAN GASTON, | 1:10-cv-00867-OWW-DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KEN CLARK, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction of attempted murder with a firearm resulting in great bodily injury and robbery.

In the instant petition Petitioner does not challenge the validity of his conviction; rather, Petitioner contends that the Board of Parole Hearings' October 2, 2008 decision finding him unsuitable for release was not supported by some evidence to demonstrate he presents an unreasonable risk to public safety if released.

Petitioner filed a state petition for writ of habeas corpus in the Los Angeles County Superior Court on April 1, 2009. The Superior Court denied the petition in a reasoned decision
///

finding there was some evidence to demonstrate that Petitioner remains an unreasonable risk to public safety if released.

On July 28, 2009, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Second Appellate District. The petition was summarily denied on August 7, 2009.

On September 8, 2009, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, which issued a summary denial on February 10, 2010.

Petitioner filed the instant federal petition for writ of habeas corpus on May 17, 2010. Respondent filed an answer to the petition on August 3, 2010, and Petitioner filed a traverse on September 1, 2010.

## STATEMENT OF FACTS

On January 11, 1992, Petitioner, along with four suspects, forced their way into the victim's residence and at gunpoint robbed the victims who were playing cards. The victim, along with a friend, fled into the bathroom and upon hearing a gunshot the victim exited the bathroom and was confronted by Petitioner. Petitioner shot the victim two times hitting him in the upper chest, which eventually left him paralyzed from the chest down. The victim's friend escaped through a window. During this time, two of the three suspects held the other victims at gunpoint, robbed them of money and jewelry. All of the suspects ran out of the front door. All of the suspects wore blue and gray bandanas over their faces and had dark clothing.

On February 26, 1992, Petitioner, along with two other male companions, forced their way into the residence of Francisco and Irene Morales demanding money and jewelry. Petitioner, armed with a gun, broke a piece of wire from the phone line and gave it to a co-suspect who tied one of the victims with the phone line. One of the suspects removed $125 from the victim's pants pockets.

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

1        Petitioner has the burden of establishing that the decision of the state court is contrary to
2 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
3 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the
4 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
5 state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
6 Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme. Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to

demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

   (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

      (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
      (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
      (C) The victim was abused, defiled or mutilated during or after the offense.
      (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
      (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

   (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

   (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'

   (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

   (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

   (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

   (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

   (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

   (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

   (4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

   (5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

  (6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

  (7) Age.  The prisoner's present age reduces the probability of recidivism.

  (8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

  (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9).

  The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing.  Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

  Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d at 609.  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

  The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current

6

> dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public.  It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d at 1214 (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

      A.     Last Reasoned State Court Decision

In the last reasoned state court decision of the San Joaquin County Superior Court, the Court denied the petition stating in pertinent part:

> In this case, the Board found the commitment offense to be especially heinous because multiple victims were attacked in the same and separate incidents. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(A).) The first robbery involved two victims, one of whom [w]as seriously and permanently injured.  The second robbery involved an attack on two adults and one child.  This crime was also especially heinous because the motive was very trivial in relation to the offense. (Cal. Code Regs., tit. 15, § 2402(c)(1)(E).) "To fit the regulatory description, the motive must be materially less significant (or more "trivial") than those which conventionally drive people to commit the offense in question, and therefore more indicative of a risk of danger to society if the prisoner is released than is ordinarily present." (In re Scott (2008) 119 Cal.App.4th 871, 893.)  In this case, the motive for the attempted murder was a robbery.  The Court finds that there is some evidence that the motivation to obtain money is very trivial. (In re Honesto (2005) 130 Cal.App.4th 81, 95.)  Therefore, it is more indicative [of] an unreasonable risk of danger to society if petitioner is released than is ordinarily present.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> Petitioner's pre-conviction history is indicative of an unreasonable risk of danger to society. Petitioner demonstrated assaultive behavior at an early age. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(2).) He was convicted or robbery in 1984 at the age of fourteen and was made a ward of the court. He was convicted of battery on a person in 1988. Petitioner dropped out of school in the seventh grade and supported himself by selling narcotics and robberies. He was involved with the gang at age seven.
>
> Petitioner's post-conviction history also indicates that the implications of dangerousness that derived from his commission of the commitment offense remain probative of a continuing threat. Petitioner has received six CDC 115s for serious misconduct in prison. The last was in 2007 for possession of obscene materials. He was disciplined in 2001 for mutual combat, which shows a relatively recent act of violence. Petitioner continued to maintain ties gang ties [sic] in prison. He did not begin the process of dissociation until 1999 and stated that the process was not complete until 2003. According to his most recent psychological evaluation dated September 8, 2008, petitioner remains in the moderate range for future violence. This is some evidence that he continues to pose an unreasonable risk of danger to society.

(Ex. 2, to Answer.)

      B.     2008 Board Hearing

At Petitioner's *initial* parole consideration hearing in 2008, the Board found him unsuitable for release based on the circumstances of the commitment offense, prior criminal history, institutional misconduct, and unfavorable psychological evaluation.

The commitment offense involved attacking several victims during separate incidents. David Williams, the first victim, is paralyzed from the chest down as a result of Petitioner shooting him. Petitioner and his crime partners forced their way into Williams' residence and the victims ran to hide. When Mr. Williams felt it was safe to exit the bathroom, Petitioner was standing directly in front of him with a gun. Mr. Williams attempted to push the gun away, and Petitioner shot several times striking Williams twice, resulting in paralyzation from the chest down.

Approximately a month and a half later, victims Francisco and Irene Morales came home to find Petitioner and two others inside their residence robbing them. While their baby was in the home, guns were pointed at their heads and money was taken. At one point, the gun was even pointed at the baby's head and threatened. Petitioner broke a piece of wire from the phone line and gave it to a co-suspect who tied one of the victims with the phone line. One of the suspects

removed $125 from the victim's pants pockets.

The California Supreme Court has held that "[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." In re Rosenkrantz, 29 Cal.4th 616, 682 (2002). However, in cases where prisoners have served their suggested base terms and have demonstrated strong evidence of rehabilitation and no other evidence of current dangerousness, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole. In re Lawrence, 44 Cal.4th 1191, 1211 (2008). In this case, at the time of Petitioner's *initial* parole hearing in 2008, he had only served 16 years on his 18 years-to-life sentence. Moreover, the Board relied on other factors beyond the commitment offense in finding Petitioner unsuitable for release.

Petitioner has an extensive criminal history which began at the age of 14 and includes instances of violence against others. Cal. Code Regs. tit. 15, § 2402(c)(2). At the age of 14, Petitioner committed an armed robbery in 1984. Then in 1988 he committed a battery on a person, and just two months later he committed a grand theft. He suffered numerous offenses as an adult, including possession of narcotics for sale, disruptive conduct in public, carrying a concealed and loaded firearm, receiving stolen property, and taking a vehicle without authorization. Petitioner became a member of the Crips gang at the age of seven, and he dropped out of school in the seventh grade. Petitioner supported himself and the gang by selling narcotics and committing robberies.

During his incarceration, Petitioner suffered six serious rules violations (CDC-115s), the most recent in 2007 for gambling. He was also disciplined in 2001 for mutual combat-which demonstrates a fairly recent act of violence within prison. Cal. Code Regs. tit. 15, § 2402(c)(6). Petitioner also maintained his association with the gang in prison and did not being the process of disassociation until 1999 which was complete in 2003.

The most recent psychological report authored by Dr. Robert E. Record found that Petitioner remains in the moderate range for future violence. Such finding was properly considered by the Board and superior court in determining if Petitioner remains an unreasonable risk to public safety if released. See e.g. Hayward, 603 F.3d at 563 (psychologist's evaluation

9

that prisoner posed a "low to moderate" risk of future violence, coupled with evidence that offense was particularly aggravated, is sufficient evidence to demonstrate future dangerousness to support denial of parole.)

After considering the factors in support of suitability, the Board concluded that the positive factors did not outweigh the factors in support of unsuitability, and the superior court's determination that the heinous circumstances of the commitment offense, prior criminal history, institutional misconduct, and unfavorable psychological evaluation demonstrate Petitioner continues to remain an unreasonable risk to public safety is not an unreasonable application of the some evidence standard, nor an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d).

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 20, 2010**            /s/ **Dennis L. Beck**
                                         UNITED STATES MAGISTRATE JUDGE